# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SEMO ENVIRONMENTAL SERVICES, LLC WARNER ENTERPRISES, LLC, and BRAD WARNER, <br><br>   Plaintiff, <br><br>   v. <br><br> SEMO ENVIRONMENTAL, LLC JEFF RIDDLE, RIDDLE ENVIRONMENTAL SERVICES, LLC, and JSR ENVIRONMENTAL, LLC, <br><br>   Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:11CV226 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs SEMO Environmental Services, LLC, Warner Enterprises, LCC and Brad Warner's (collectively, "Plaintiffs") Motion for Preliminary Injunction [ECF No. 35], Motion for Temporary Restraining Order [ECF No. 42], Motion for Order to Show Cause and for Sanctions [ECF No. 44] and Motion to Dismiss Counterclaim [ECF No. 46] of Defendants SEMO Environmental, LLC, Jeff Riddle, Riddle Environmental Services, LLC and JSR Environmental, LLC (collectively, "Defendant"). The Court will address each motion below.

## Background

*Factual*[1]

The nature of Plaintiffs' claims stem from a business partnership gone bad between Plaintiff Warner and Defendant Jeff Riddle. Both Warner and Riddle are residents of Stoddard County, Missouri. Prior to 2006, Warner was a 50% owner of an environmental cleanup business called EcoTech of Missouri. In 2006, Warner bought out his then business partner's interest and started a new company.

In July of 2006, Warner formed SEMO Environmental Services, LLC ("SEMO") and brought on Riddle to handle sales. SEMO operated as an environmental cleanup business that cleaned up hazardous material spills and other projects involving removing hazardous and industrial wastes. Warner and Riddle agreed to operate as 50/50 partners. From 2006 to 2008, they continued operates as equal partners. In 2008, upon being terminated from his full time job outside of SEMO, Riddle started working for SEMO on a full time basis. In February of 2009, the two parties agreed that Warner would become the sole owner, while Riddle would begin working as an independent contractor for SEMO.

In 2010, Warner requested that Riddle sign a non-compete agreement. Riddle refused to do so, however, both continued with their working relationship and

---

[1] Generally, findings of fact and conclusions of law made in a court's disposition of a motion for preliminary injunction are not binding. *U.S. Securities and Exchange Com'n v. Zahareas,* 272 F.3d 1102, 1105. (C.A.8 (Minn.),2001).

proceeded to business together for SEMO. In the summer of 2010, Riddle traveled to Michigan for a job. The job required an air boat and, with Warner's permission, Riddle took one of SEMO's air boats to Michigan and brokered a deal to do clean-up work. Riddle was the project manager for that job and in the summer of 2011, Warner left his previous job and began working full time with SEMO in Michigan. Upon Warner working with Riddle in Michigan, the relationship between the two became strained. Around this time, Warner asked Riddle to sign a non-compete agreement and a confidentiality agreement. Riddle again refused to sign the agreements and indicated that he did not agree with any of the terms therein. According to Riddle's testimony, by November of 2011, he was no longer doing any business with or for SEMO. Warner testified that he did not become aware of Riddle's decision to cease working for SEMO until December of 2011.

On July 17, 2010, Riddle filed Articles of Organization for SEMO Environmental, LLC. In June of 2011, Warner told Riddle that if he did not transfer over to Warner all of his interest in SEMO Environmental, LLC, Warner would terminate Riddle as an independent contractor for SEMO. Although Riddle attempted to transfer over his control of SEMO Environmental, LLC, the document had an incorrect charter number and the Secretary of State rejected the transfer. On

October 24, 2011, Riddle registered the domain name www.semo-environmental.com; however, he never built a website.

During Riddle and Warner's time as business partners, Riddle registered the domain name www.semoenvironmental.com and developed a website for SEMO. Following that, Riddle registered the domain name www.warnerent.com, which served as SEMO's email system starting in 2009 or 2010. In November 2011, disputes arose between Riddle and Warner regarding Riddle's access and control over the websites. Plaintiffs allege that upon dissolution of Warner and Riddle's business relationship, Riddle failed to return control of the websites to SEMO, and that Riddle improperly accessed emails sent to SEMO in late 2011. On December 28, 2011 the Court signed a Stipulated Temporary Restraining Order [ECF No. 15] that, among other things, ordered Riddle to take the necessary steps to transfer control of the websites to Plaintiffs, including the domain names www.cajun-mafia.com and www.semo-environmental.com.

Also subject to the Stipulated Temporary Restraining Order were certain phone numbers and AT&T accounts. Riddle's personal cell phone number since 1994 has been (573) 820-2020. During his time spent working for SEMO, Riddle added the phone number to the company account due to much of his business communications being handled on that particular phone. In July, 2011, Riddle

transferred the phone number back to his personal account. While Riddle was still working for SEMO, he established a SEMO 24-hour emergency number, (573) 421-2855, which Warner paid through his personal AT&T account. Riddle also established a toll-free number for the company. During his involvement with SEMO, the 2855 and toll-free numbers were forwarded to Riddle's personal cell phone so he could respond to the calls. All of these numbers, minus the 2020 number, were transferred back to Warner as part of the stipulated Temporary Restraining Order.

### *Procedural*

Plaintiffs filed their complaint in this matter on December 22, 2011. Since that time, the Court has granted Plaintiffs leave twice to amend the complaint. *See* ECF Nos. 16 and 31. As discussed above, on December 28, 2011, the parties submitted–and the Court signed–a stipulated Temporary Restraining Order that, *inter alia*, directed Defendants to transfer to Plaintiffs access and control to multiple websites, phone numbers, company credit cards and work related files. Riddle was also ordered to return a laptop he received from Warner to his attorneys, who would make copies of the files to be used as evidence in this case. Further, a third party computer company was to copy all of the files, including emails, from Riddle's home computer, old laptop computer and cell phone(s) that were work related for SEMO Environmental Services LLC, Warner Enterprises LLC or Warner Trucking.

Plaintiffs now contend that Defendant Riddle violated various terms of the stipulated Temporary Restraining Order.

On April 17, 2012, the Court conducted a preliminary injunction hearing that lasted over five hours in duration. At the hearing, both sides presented testimony regarding the facts of the case and the status of the TRO.

## Discussion

### *Motions for Preliminary Injunction*
### *&*
### *Modification Temporary Restraining Order*

As the Supreme Court recently emphasized, injunctive relief "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). The relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest. *CDI Energy Services v. West River Pumps, Inc*., 567 F.3d 398, 401 -402 (8th Cir. 2009), citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The party seeking injunctive relief bears the burden of proving these factors. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir.2006). Plaintiffs' motions for injunctive relief are denied, as the current stipulated Temporary Restraining Order is

sufficient mechanism in protecting the interests and rights of all parties involved. In applying the *Dataphase* factors outlined above, Plaintiffs have failed to persuade the Court that further injunctive relief is necessary here. With regard to the first *Dataphase* factor, Plaintiffs have not offered sufficient evidence to prove their likelihood for success on the merits. As the facts show, Defendant Riddle never signed a non-compete agreement or confidentiality agreement. Without these instruments in place, much of Plaintiffs' argument in favor of injunctive relief is problematic.

With regard to Plaintiffs' breach of fiduciary duty claim, Missouri courts recognize a tort for breach of the duty of loyalty owed by every employee to his or her employer, and hold that such breach arises when an employee actually engages in the direct competition with the employer. *Gustafson v. Ful Service Maintence Corp.,* 2012 WL 685363, 1-2 (E.D.Mo.,2012). In the present case, however, Defendant Riddle was an independent contractor hired by SEMO, and he was not subject to a non-compete agreement. Missouri law explicitly recognizes that employees may agree among themselves to compete in the future with their employer upon termination of their employment. *Walter Zemitzsch, Inc. v. Harrison*, 712 S.W.2d 418, 421 (Mo. App. E.D. 1986). Without a non-compete agreement in place, Plaintiffs cannot limit and restrict Defendant Riddle from competing against

7

them upon dissolution of his independent contractor relationship with SEMO.[2]

Plaintiffs also fail to prove a likelihood of success on the merits for their tortious interference with a business expectancy claim. To prove such a claim, Plaintiffs must show: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or contract; (3) intentional interference by the defendant causing or inducing a breach of the contract relationship; (4) the absence of justification; and (5) damages resulting from defendant's conduct. *Healthcare Services of hte Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 614 (Mo.2006). Plaintiffs have not offered any evidence showing that Defendants have caused damage to Plaintiffs through interference with Plaintiffs' business relationships, or that they have suffered any damages. Plaintiffs acknowledge this lack of evidence and contend that further injunctive relief will allow them to produce such evidence. The Court disagrees–to grant such relief would cast an unreasonable burden on Defendants in a manner that goes against the spirit of the *Dataphase factors.* Additionally, voluminous discovery documents have

---

[2] *See also Metal Lubricants Co. v. Engineered Lubricants Co.,* 284 F.Supp. 483, 488 (E.D.Mo.1968) (division manager and sales administrative staff resigned and formed a competing company and the court held, "[t]hrough their knowledge of the market and personal contacts they may be able to capture substantially all of plaintiff's business. But the knowledge they will use for this purpose is nonetheless unprotectable."

already been produced, and Plaintiffs' notion that there is a need for more in order to prove the need for further injunctive relief is not well taken.

Plaintiffs also fail to prove a likelihood of success on the merits with regard to the Lanham Act, 15 U.S.C. § 1051, and unfair competition claims. The Court finds that the current stipulated TRO adequately protects both parties' interests. Based on the evidence before the Court, Defendants have not used Plaintiffs' service mark in connection with any of its services. Further, Defendant Riddle never built a website at [www.semo-environmental.com.](www.semo-environmental.com.) The precautions that were ordered in the stipulated TRO are sufficient at this stage in the litigation.

With regard to the second *Dataphase* factor, Plaintiffs have failed to convince the Court that the guidelines set forth in the stipulated TRO subject Plaintiffs to the threat of irreparable harm. Obviously, both parties agreed to the terms of the TRO, and despite Plaintiffs' proffered concerns, the facts before the Court do not jeopardize the efficiency of the current stipulated TRO. Much of Plaintiffs' argument focuses on the fear of the unknown. The Court has given both parties ample opportunity to conduct extensive discovery, and quite frankly, if the Plaintiffs cannot pinpoint further irreparable harm that has been, or will be, caused without further injunctive relief, it makes no sense to disturb the current TRO.

With regard to the "balance of harms" test under *Dataphase*, Plaintiffs fail to offer any compelling evidence that they would be more harmed than Defendant Riddle if the Court deny's further injunctive relief. As the Court held in *Noodles Development, LP v. Ninth Street Partners, LLP*, 507 F.Supp.2d 1030, 1039 (E.D.Mo.2007), in conducting the "balance of harms" analysis required under *Dataphase*, an illusory harm to the movant will not outweigh any actual harm to the non-movant. Citing *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1023 (8th Cir.192). Additionally, in the present case, Defendant Riddle has already taken remedial action pursuant to the stipulated TRO. Thus, the balance of harms is readjusted, because the potential for economic or other harm to Plaintiffs have been eliminated. *Noodles,* 507 F.Supp.2d at 1039 ("Another consideration in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action.").

And finally, for all of the reasons set forth above, granting Plaintiffs' request for further injunctive relief would go against the public interest factor under *Dataphase.* As such, Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction are denied. Additionally, the Court finds that Defendants did not violate the Temporary Restraining Order; therefore, Plaintiffs' Motion to Show Cause, Motion for Contempt, and Motion for Sanctions is also denied.

### *Plaintiffs' Motion to Dismiss Counterclaim*

On April 25, 2012, Plaintiffs filed Motion to Dismiss Counterclaim [ECF No. 46]. Defendants filed an opposition to said motion [ECF No. 55], to which Plaintiffs replied [ECF No. 62].

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556) "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation mark omitted).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Id.* at

1950-51. These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

Defendant Riddle's counterclaim alleges that Riddle became a 1099 independent contractor for SEMO, and SEMO owner Brad Warner agreed to pay Riddle 4% of SEMO's gross receipts. *See* ECF No. 33. Further, Riddle alleges that SEMO failed to pay him the promised compensation. *Id.* Plaintiffs motion to dismiss alleges that Riddle's counterclaim fails to state sufficient facts to establish that Plaintiff Warner's alleged agreement to pay Riddle a percentage of SEMO's gross receipts constitutes a contract. Further, Plaintiffs claim that the counterclaim fails to

establish any facts that would establish that Defendant Riddle is entitled to any unpaid compensation.

When viewing Defendant Riddle's allegations under Rule 12(b)(6) and the *Iqbal* analysis, the Court finds that Riddle's counterclaim plausibly suggests an entitlement to relief. *See Id.* at 1951. Riddle's counterclaim specifically alleges facts that allows the Court to reasonably infer that Riddle entered into a 1099 contract with SEMO and owner Brad Warner, and that Warner and SEMO failed to compensate Riddle 4% of SEMO's gross receipts. Simply put, Riddle's counterclaim states a claim to relief that is plausible on its face. *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)). As such, Plaintiffs' motion to dismiss is denied.

## **Conclusion**

In considering the relevant factors outlined in *Dataphase,* Plaintiffs' request for further injunctive relief fails, as the Court finds that the current stipulated Temporary Restraining Order is sufficient in protecting the interests of all parties involved. Furthermore, the Court finds that Defendants did not violate the Temporary Restraining Order; therefore, Plaintiffs' Motion to Show Cause, Motion for Contempt, and Motion for Sanctions is also denied. Additionally, the Court finds

that Defendant Riddle's counterclaim plausibly suggests an entitlement to relief; therefore, Plaintiffs' Motion to Dismiss Defendants' Counterclaim is also denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction [ECF No. 35] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Temporary Restraining Order [ECF No. 42] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Order to Show Cause, Motion for Contempt, and Motion for Sanctions [ECF No. 44] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Counterclaim [ECF No. 46] is **DENIED.**

Dated this 6th day of March, 2013.

                                    HENRY EDWARD AUTREY
                               UNITED STATES DISTRICT JUDGE